UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**EBONY CANDLER,**

Plaintiff,

v.                                                    **No. 4:25-cv-00286-P**

**LHOIST NORTH AMERICA OF TEXAS,
LLC,**

Defendant.

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant's Motion for Summary Judgment. Having considered the briefings and evidence of record, the Court concludes the Motion should be and hereby is **GRANTED**.

## BACKGROUND

Defendant Lhoist North America of Texas, LLC ("Lhoist"), produces various lime products and uses truck drivers to ship its products to Texas customers. ECF No. 51 at 1–2. Plaintiff Ebony Candler was a truck driver assigned to Lhoist's McKinney, Texas, terminal. Candler, who is Black, alleges that Lhoist discriminated against him based on his race and retaliated against him for alleged protected activity. ECF No. 51 at 2.

Candler worked for Lhoist as a truck driver from March 2020 until his voluntary resignation in February 2021. ECF No. 48 at 1–2. Candler reported to fleet supervisor Jesse Ruiz and terminal supervisor Jesse Morris. ECF No. 51 at 3. He often interacted with dispatcher Warren Jones and foreman Landys Moreland. *See* ECF No. 51 at 3–4, 6–8.

Candler's concerns began on his first day at Lhoist. Jones, who was White, made him pick up trash around the terminal. ECF No. 51 at 3. He also observed that most of his co-workers, including White lead

driver Nick Ulch, ignored him and refused to train him. ECF No. 51 at 3–4. Candler recalls a fellow Black driver telling him that Ulch had stated he was "not going to be around that Black guy." ECF No. 51 at 4. Candler does not state whether Lhoist treated all new drivers this way. *See* ECF No. 53 at 3–4.

Candler also believed that Morris and Jones waited for him to arrive at the yard to watch him and harass him. ECF No. 51 at 4. Candler believed that Jones would schedule him to arrive earlier than other drivers to harass him. ECF No. 51 at 4. He recalls that Morris and Jones sometimes delayed his schedule by climbing onto his trailer to inspect his load. ECF No. 51 at 4. Candler does not state whether non-Black drivers also received this treatment. *See* ECF No. 51 at 4. He also says, without providing further details or a date, that Jones almost pushed Candler off the top of a trailer one time. ECF No. 51 at 4. He feared being alone at the yard with Jones because he believed that Jones might falsely write him up or physically harm him. ECF No. 51 at 4. Candler also alleges that he heard Jones describe Black people as lazy. ECF No. 51 at 4.

Candler believes he complained to Ruiz about discriminatory treatment seventeen or eighteen times throughout his eleven months at Lhoist. ECF No. 48 at 6. He "made his first race-based complaint to Ruiz about three weeks into his employment," which was around April 2020. ECF No. 51 at 4. He did not complain to anyone else in management. ECF No. 48 at 6. He does not know whether Jones knew about his discrimination complaints. ECF No. 48 at 6. He points to nothing else in the record about the contents of these complaints, nor does he provide dates for any complaints other than the April 2020 complaint, a text message to Ruiz in late December 2020 asking how to submit a complaint to Human Resources, and a January 2021 Human Resources complaint. *See* ECF No. 51 at 4–7.

The record includes four disciplinary write-ups against Candler, two of which are disputed. On June 19, 2020, Candler received a warning for arriving at work late. ECF No. 51 at 4–5. Candler does not dispute that he received this write-up, though he disputes its merits. ECF No. 51 at 4–5. He claims he took a brief break in his vehicle after realizing he

2

clocked in early, which his timecard reflects, but does not say whether he arrived late after this break. *See* ECF No. 51 at 4–5, 18. He also received discipline in early July 2020 for being late to work twice in a seven-day period, which he also does not dispute. ECF No. 48 at 2–3; *see* ECF No. 51 at 4–5. Candler disputes that he received two August 2020 write-ups for being late to work. ECF No. 48 at 3; ECF No. 51 at 4–5. Lhoist never docked Candler's pay, suspended Candler, or placed him on final warning. ECF No. 48 at 3.

Candler's concerns elevated when Jones assigned him the "last load" one evening even though Candler thought White drivers were available to take the load. ECF No. 51 at 5–7. Usually, the first Lhoist driver to come back to the terminal received the last load. ECF No. 51 at 6. The last load was inconvenient because it often resulted in the driver running late to the terminal that night. ECF No. 51 at 6. Sometimes, this meant that the driver would have to wash their truck in the dark or come back earlier than normal the next morning to wash their truck before deliveries. ECF No. 51 at 6. Candler lists several non-Black drivers he believes regularly avoided taking last loads. ECF No. 51 at 5–6. Neither party points to any incidents where drivers, whether White or Black, were disciplined for avoiding the last load or had to deliver the last load without pay. *See* ECF No. 51 at 5–7; ECF No. 53 at 5–7.

On this occasion, Jones texted Candler during a previous delivery and asked him to take the last load. ECF No. 51 at 6. When Candler arrived at the terminal, he observed that several White drivers were idling in the yard and asked if he still needed to take the load. ECF No. 51 at 6–7. Jones, using profanity, told him he needed to get on the scale, and threatened to tell Ruiz if Candler did not comply. ECF No. 51 at 7. Candler then complied; Candler does not allege that any disciplinary action followed. *See* ECF No. 51 at 7. After the incident, on December 28, 2020, Candler texted Ruiz to ask how to report Jones's "disrespect toward him" to Human Resources. ECF No. 51 at 7. Then, in January 2021, Candler alleges that he "complained to HR Representative Karen Brown about Mr. Jones's discriminatory treatment of him," though he does not provide further details about that oral complaint. ECF No. 51 at 7.

3

Candler's last full day working at Lhoist was January 15, 2021, then he missed about two weeks sick with COVID-19. ECF No. 48 at 3. He returned February 3, 2021, and voluntarily resigned that day after an interaction with Jones. ECF No. 48 at 3; ECF No. 51 at 7–8. That day, Jones told Candler that Candler needed to fix the lights on Candler's truck. ECF No. 51 at 7–8. Candler could not find a spare light in the shed, so he asked Jones for help. ECF No. 51 at 8. As Jones helped Candler look for a light in the shed, Candler claims that Jones was "clearly frustrated" as he searched. ECF No. 51 at 8. Jones then tossed a light bulb to Candler, which hit Candler in the rib cage. ECF No. 51 at 8. Candler refers to the incident as a verbal and physical assault. ECF No. 51 at 8, 17. He does not allege any injuries or other consequences because of this incident. *See* ECF No. 51 at 8, 17. He voluntarily resigned later that day. ECF No. 51 at 7–8.

Candler then filed this suit asserting claims for unlawful discrimination and retaliation under 42 U.S.C. § 1981, initiating this action on August 7, 2024. ECF No. 1. Candler filed his First Amended Complaint on March 21, 2025, which is the live complaint in this case. ECF No. 27. Lhoist moved for summary judgment on both claims on December 5, 2025. ECF No. 47. It is ripe for review.

## LEGAL STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242–43 (1986). A fact is "material" if it would affect a case's outcome. *Id.* at 248. Generally, the "substantive law will identify which facts are material," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* In assessing whether summary judgment is appropriate, the Court views evidence in the light most favorable to the nonmovant. *Cunningham v. Circle 8 Crane Servs., LLC*, 64 F.4th 597, 600 (5th Cir. 2023).

The Court may rely on any evidence of record but need only consider those materials cited by the parties. FED. R. CIV. P. 56(c)(1)–(3); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (noting summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"). But the Court need not mine the record for evidence supporting the nonmovant; the burden falls on the moving party to simply show a lack of evidence supporting the nonmovant's case. *See Malacara v. Garber*, 353 F.3d 393, 404–05 (5th Cir. 2003).

## ANALYSIS

Defendant seeks summary judgment on each of the claims levied by Mr. Candler. The Court will address each in turn.

### A. Candler fails to state a prima facie case of race discrimination because he lacks evidence that other drivers were similarly situated.

Section 1981 prohibits race discrimination in the "making, performance, modification, and termination of contracts." 42 U.S.C. § 1981(b). Bell's Section 1981 claims are evaluated under the *McDonnell Douglas* burden-shifting framework when, as here, the plaintiff relies on circumstantial evidence. *Wesley v. Gen. Drivers, Warehousemen & Helpers Loc. 745*, 660 F.3d 211, 213 (5th Cir. 2011). The legal framework governing Title VII and Section 1981 claims is the same. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). The analysis for *McDonnell Douglas* requires a three-step burden-shifting framework for evaluating discrimination claims. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The burden initially lies with the plaintiff to establish a prima facie case. *Id.* It then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the [employment action]." *Id.* Finally, a plaintiff is afforded an opportunity to show through adequate evidence that the defendant's stated reasons were a mere pretext for discrimination. *Id.* at 804.

5

To establish a prima facie case of discrimination, an employee must demonstrate that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *Willis,* 749 F.3d at 319–20.

Here, a reasonable jury could not find that Candler established a prima facie discrimination case because Candler does not provide evidence that other Lhoist employees were similarly situated.

The first and second elements are not disputed. ECF No. 51 at 13; s*ee* ECF No. 48 at 8–12. Assuming, without deciding, that Candler's discrimination theories are actionable adverse actions under the third element,[1] he fails to provide evidence that the employees he claims Lhoist treated favorably were similarly situated under the fourth element.

An employee is "similarly situated" if they are in "nearly identical" circumstances to the plaintiff, meaning that they "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Harville v. City of Houston*, 945 F.3d 870, 875 (5th Cir. 2019) (citing *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)). A conclusory explanation of why an employee is similarly situated is insufficient; a plaintiff must identify specific overlapping job duties, responsibilities, past performance, or other specific attributes that render the employee "nearly identical." *Shahrashoob v. Tex. A&M Univ.*, 125 F.4th 641, 652 (5th Cir. 2025).

Here, Candler fails to provide evidence that the employees he alleges Lhoist treated favorably were similarly situated. Candler lists the names of several White drivers who are outside his protected class and alleges that they did not have to engage in certain tasks like he did or

---

[1] Candler also advances constructive discharge and hostile work environment theories, but Candler did not plead these claims as causes of action in his complaint. *See* ECF No. 27 at 9–10. Because Candler did not raise these arguments until his Response to Lhoist's Motion for Summary Judgment, the Court does not address them.

that they received favorable treatment in various ways. ECF No. 51 at 51 at 3, 5–6, 16–17. Even if Lhoist treated these drivers favorably like Candler argues, Candler fails to identify any evidence in the record showing that these drivers are similarly situated—he does not provide any other driver's scope of responsibilities, past performance, or any specific characteristics that would render them "nearly identical." *See* ECF No. 51 at 3, 5–6, 16–17. Thus, Candler's allegations that these individuals are comparators are conclusory and do not provide a basis for a reasonable jury to find in his favor on this element.

Therefore, Candler fails to make a prima facie case of discrimination because he provides no evidence that his proposed comparators were similarly situated.

## B. Candler fails to state a prima facie case of retaliation.

Candler fails to provide sufficient evidence that his complaints before his disciplinary actions were protected activity and he cannot show that he suffered an adverse employment action after his January 2021 Human Resources complaint.

A Section 1981 retaliation claim is similarly analyzed under *McDonnell Douglas. Johnson v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 90 F.4th 449, 460 (5th Cir. 2024). First, to establish a prima facie case of retaliation, Bell must show that "(1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). As with a discrimination claim, the burden initially lies with the plaintiff to establish a prima facie case. *Id.* It then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the [employment action]." *Id.* Finally, a plaintiff is afforded an opportunity to show through adequate evidence that the defendant's stated reasons were a mere pretext for discrimination. *Id.* at 804.

An individual engages in a protected activity if they (1) oppose race discrimination or (2) participate in a qualifying investigation, proceeding, or hearing. *Yarbrough v. SlashSupport, Inc.*, 152 F.4th 658,

667 (5th Cir. 2025), *cert. denied*, 25-857, 2026 WL 795104 (Mem) (U.S. Mar. 23, 2026). To oppose race discrimination, an employee must reasonably believe the employer's conduct is unlawful; reasonableness is determined from the perspective of a person not instructed on the law. *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209–11 (5th Cir. 2021). "This inquiry is informed by the nature of the statement forming the base of the alleged discrimination, whether the statement was directed at a particular person or group of persons, whether it came from a person with supervisory authority, and the setting where the employee's complaint was voiced." *Id.* at 1211 (citing *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 243–44 (5th Cir. 2016)).

Candler points to three groups of alleged protected activities, each corresponding to the three actions he claims were adverse. The Court will consider each in turn.

First, Candler claims he engaged in protected activity when he complained of race discrimination by Jones to Ruiz during the first two or three weeks of his employment (roughly April 2020). ECF No. 51 at 17. All Candler says about this complaint is that he "complained of race discrimination by Mr. Jones to Mr. Ruiz . . . starting two to three weeks into his employment," and states that all his complaints were "about Lhoist's disparate treatment towards Black drivers in terms of discipline and assignments." ECF No. 51 at 4, 17. Candler fails to identify evidence regarding what specific conduct he complained about, whether that conduct was directed at him or impacted all Lhoist drivers, or the specific setting where Candler voiced his complaint. *See* ECF No. 51 at 4, 17. Thus, without more, Candler does not provide enough evidence about this complaint for the Court to engage in the Fifth Circuit's reasonableness analysis, so Candler fails to establish that his April 2020 complaint was protected activity.

Even if the Court infers that the trash and training incidents Candler recalls from his first two or three weeks at Lhoist were the subject of his April 2020 complaint, each does not support a reasonable belief that Lhoist or Jones acted unlawfully.

As for Jones asking Candler to pick up trash, Candler fails to identify any specific action by Jones that might have provided a basis for believing that Jones might have done this because of race. *See* ECF No. 51 at 3–4, 16–17. He also does not provide evidence of whether all new employees (White or Black) were subjected to this conduct. *See* ECF No. 51 at 3–4, 16–17. Thus, his being asked to pick up trash could not have supported a reasonable belief that Jones acted unlawfully.

As to other drivers' unwillingness to train Candler, the only evidence of an unlawful basis for this allegation is hearsay: Candler recalls a fellow driver's recollection of yet another driver's racial remark: "Mr. Griggs informed Mr. Candler that Mr. Ulch stated he was 'was not going to be around that Black guy.'" ECF No. 51 at 4. Not only is this comment hearsay, but it also has nothing to do with Jones, who was the subject of Candler's April 2020 complaint, so it is irrelevant. ECF No. 51 at 4. Otherwise, Candler provides no evidence on whether Ulch or others who refused to train him were supervisors, whether they were supposed to train him, whether their omission targeted him or was the way they treated all newcomers, or any other probative evidence beyond his own conclusory statement that Lhoist treated him differently from other non-Black drivers. *See* ECF No. 51 at 3–4, 16–17. Thus, even inferring that Candler's complaint to Ruiz addressed the trash and training incidents, those could not have supported a reasonable belief that Lhoist or Jones had engaged in unlawful conduct before Candler's first report.

Second, Candler alleges that he engaged in protected activity when he continued to complain to Ruiz throughout his eleven-month employment at Lhoist and implies that some of these complaints preceded the disputed discipline on the record from August 2020. ECF No. 48 at 6; *see* ECF No. 51 at 4, 5, 17. Again, Candler fails to point to evidence in the record regarding the nature of these continued complaints. *See* ECF No. 51 at 3–5, 16–17. His conclusory statements are not enough to establish protected activity. Worse, an inference about which of the various (and mostly undated) incidents Candler cites in his Response formed the basis for these complaints is impossible because Candler fails to even provide the dates for those other complaints. *See* ECF No. 51 at 3–5, 16–17. Thus, there is no evidence in the record to

9

support a reasonable belief that Lhoist or Jones had engaged in unlawful conduct before Candler's various other complaints.

Third, Candler also claims that he engaged in protected activity when he verbally complained to Human Resources in January 2021 that Jones was discriminating against him because of his race. ECF No. 51 at 17, 18. The Court declines to consider whether this complaint was protected activity because even if it was, Candler cannot prove that he suffered an adverse employment action after this complaint.

For purposes of retaliation, an employment action must be materially adverse, meaning that it would dissuade "a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). An employment action is also adverse if it causes some harm affecting an identifiable term or condition of employment. *Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024). In other words, the challenged action must meaningfully alter the terms of employment and injure the employee. *Fleming v. Methodist Healthcare Sys. of San Antonio, Ltd. L.L.P.*, No. SA-21-CV01234-XR, 2024 WL 1055120, at *12 (W.D. Tex. Mar. 11, 2021). De minimis workplace trifles are not actionable under § 1981. *See Hamilton v. Dall. Cnty.*, 79 F.4th 494, 505 (5th Cir. 2023) (explaining that Title VII does not permit liability for de minimis workplace trifles); *Sambrano v. United Airlines, Inc.*, 707 F. Supp. 3d 652, 665 (N.D. Tex. 2023) (requiring more than de minimis harm).

Candler highlights three adverse actions for his retaliation claim: (1) his discipline in June 2020 for allegedly being late; (2) his two disciplinary incidents in August 2020; and (3) Jones's throwing a light bulb at him on February 3, 2021. ECF No. 51 at 17. The Court declines to consider the first and second allegations because Candler fails to establish that his complaints preceding those incidents were protected activities.

But as to the third claim, Candler alleges that he suffered adverse action when Jones "verbally and physically assaulted" him by tossing him a lightbulb in Lhoist's shed on February 3, 2021. ECF No. 51 at 17. Even accepting Candler's version of the story, Candler does not allege

that this incident meaningfully altered the terms of his employment or injured him, nor does he claim that it would have dissuaded him from making further complaints or filing discrimination charges. *See* ECF No. 51 at 7, 8–17. And had he not voluntarily resigned, there is no evidence that he would have gone without pay, worked less hours, or had any other term of employment affected. *See* ECF No. 51 at 7–8, 17. To the extent that Candler asks the Court to police harsh workplace practices that do not meaningfully impact employees' terms of employment, the Court declines to do so—Section 1981 does not empower federal courts to enforce a "general civility code for the American workplace" or adjudicate "workplace trifles." *See Hamilton v. Dall. Cnty.*, 79 F.4th 494, 505 (5th Cir. 2023). Thus, because Jones's tossing Candler a light bulb did not meaningfully alter Candler's terms of employment, he fails to establish that he suffered an adverse action because of a protected activity.

Therefore, Candler fails to establish a prima facie case of retaliation. He lacks evidence as to whether his complaints to Ruiz were protected activities, and the light bulb incident was not an adverse action because it did not affect his employment terms, injure him, or dissuade him from making a complaint.

## CONCLUSION

Therefore, because Candler fails to demonstrate a genuine dispute of material fact as to a prima facie case of discrimination or retaliation under Section 1981, the Court concludes that Summary Judgment should be and hereby is **GRANTED**. All claims are **DISMISSED** with prejudice.

**SO ORDERED** on this **22nd day of May 2026**.

Mark T. Pittman
UNITED STATES DISTRICT JUDGE

11